**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| CHRISTOPHER MINTON,<br><br>Plaintiff,<br><br>*versus*<br><br>BLUE CROSS BLUE SHIELD OF TEXAS,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 1:25-CV-134 |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Blue Cross Blue Shield of Texas's ("BCBSTX") Motion to Dismiss Plaintiff's Second Amended Complaint and Memorandum in Support (#23). Plaintiff Christopher Minton ("Minton") filed a Response (#24), and BCBSTX filed a Reply (#27). Having considered the pending motion, the submissions of the parties, and the applicable law, the court is of the opinion that the motion should be denied.

## I. Background

This breach of contract case arises out of BCBSTX's issuance of an individual health insurance policy ("Policy") to Minton's wife in 2005, under which Minton was insured as a dependent. The Policy, which was in effect through December 2024, provided both in-network and out-of-network benefits for medical treatment. In early 2023, Minton suffered from a number of serious medical conditions, including internal bleeding of the brain, a stroke, and cirrhosis of the liver, for which Minton required weekly paracentesis[1] treatment and a liver transplant. In addition, Minton required air ambulance transportation after he suffered the stroke and brain

[1] "Paracentesis is a procedure that drains excess fluid called ascites from [the] abdomen." *Paracentesis*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/procedures/paracentesis (last viewed Aug. 10, 2026). Ascites are commonly caused by cirrhosis of the liver. *Id.*

bleed, and he underwent speech therapy after the stroke. BCBSTX initially approved the treatment of his conditions, including a liver transplant. BCBSTX subsequently sent Minton more than 160 Explanations of Benefits from March 2023 to June 2024. According to Minton, these explanations were riddled with conflicting information. Some stated that weekly paracentesis treatment was covered, while others denied the treatment.

As an example of BCBSTX's inconsistency, Minton alleges that coverage of his June 11, 2024, paracentesis treatment was denied by BCBSTX on June 17, 2024. On August 21, 2024, however, the denial was reversed, and BCBSTX paid for the treatment. Additionally, Minton notes that coverage for his July 11, 2024, paracentesis treatment was denied by BCBSTX on July 23, 2024, but the denial was later reversed, and the claim was paid on September 19, 2024. Other claims for paracentesis treatment remain denied. Ultimately, Minton maintains that many of his claims were denied or underpaid, including the air ambulance transportation, treatment for the stroke and brain bleed, speech therapy, and testing for approval of a liver transplant.

According to the Second Amended Complaint ("Complaint"), BCBSTX's reasons for denying or underpaying Minton's claims fall under five broad categories, and his damages are listed as follows:

a. "This service is not covered for the condition or diagnosis billed on claim."

   i. Total of $244,334.29 denied due to this code

   ii. $169,028.72 denied for paracentesis treatment

   iii. $3,986 denied for liver testing required by U.S. Network for Organ Sharing (UNOS)

   iv. $47,599 denied for additional liver testing necessary to get on the transplant list

v. $5,555 denied for liver CT scan to monitor potential cancerous lesions

vi. $18,205.57 denied for office visits, labs, and consultations

b. "Health care plan does not cover this service you until you meet age requirements."

i. $4,052.25 denied for speech therapy treatment after a stroke

c. "The amount billed is more than what is allowed for this out of network service."

i. Total of $54,564.19 denied due to this code

ii. $26,490 and $25,596.10 denied for air ambulance transportation due to stroke and brain bleed

d. "This service is not included in your coverage."

i. Total of $34.13 denied for labs

e. "Health care cover eligible service up to maximum services."

i. $5,247.28 denied for ambulance transportation

f. "This charge is greater than the amount allowed for under the Plan."

i. $14,252.78 denied for semi-private room.[2]

On August 6, 2024, Minton's counsel wrote to BCBSTX, advising that he represented Minton in this claim and requested all documents, records, and other information relevant to Minton's claim for benefits, the full names and identities of all medical professionals who had a role in evaluating Minton's claim, and a complete copy of the policy that was in effect on Minton's dates of treatment and the time of claims submission. Included with the letter were three different authorizations, including a HIPAA authorization taken from BCBSTX's website. BCBSTX did not respond. On August 27, 2024, Minton's counsel made a second request for the same

[2] Minton was in the ICU at this time this charge was incurred. He claims that the ICU does not have semi-private rooms.

documents. Again, BCBSTX did not respond. Counsel made a third request on September 3, 2024. On September 11, 2024, BCBSTX responded to the original letter, stating that this was an individual Policy and no Plan documents existed. On December 27, 2024, however, BCBSTX stated that it could not communicate with counsel until the Mintons completed a "standard BCBS authorization." Minton re-sent every authorization previously sent to BCBSTX, including its newest "standard" authorization. According to the Complaint, although BCBSTX purportedly sent a copy of the claim file directly to the Mintons, it is unclear whether the entire file has been produced. The present lawsuit was filed on March 24, 2025. On April 15, 2025, BCBSTX reprocessed and retroactively approved 4 claims that were related to weekly paracentesis treatments received in April and May 2024.

After two amendments to the original complaint, Minton now asserts only a breach of contract claim against BCBSTX. On September 9, 2025, BCBSTX filed the present Motion to Dismiss Plaintiff's Second Amended Complaint (#23), wherein BCBSTX avers that Minton's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Additionally, BCBSTX argues that to the extent Minton's breach of contract claim is predicated on his allegation that BCBSTX may reverse decisions on claims at some point in the future, such claims are not yet ripe and should be dismissed under Federal Rule of Civil Procedure 12(b)(1). Minton filed a Response (#24), and BCBSTX filed a Reply (#27).

## II. Analysis

### A. Failure to State a Claim

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement

of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face"); *Jenkins v. Tahmahkera*, 151 F.4th 739, 747 (5th Cir. 2025); *Spano ex rel. C.S. v. Whole Foods, Inc.*, 65 F.4th 260, 262 (5th Cir. 2023) (quoting *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018)). Such a motion is "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020); *accord Damond v. City of Rayville*, 127 F.4th 935, 938 (5th Cir. 2025); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. 2019). In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Mesa*, 582 U.S. 548, 550 (2017); *Benfer v. City of Baytown*, 120 F.4th 1272, 1279 (5th Cir. 2024); *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021); *IberiaBank Corp. v. Ill. Union Ins. Co*, 953 F.3d 339, 345 (5th Cir. 2020) (citing *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013)). The court, however, does not "strain to find inferences favorable to the plaintiff[]" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004); *accord Ruvalcaba v. Angleton Indep. Sch. Dist.*, No. 20-40491, 2022 WL 340592, at *3 (5th Cir. Feb. 4, 2022); *Stringer v. Town of Jonesboro*, 986 F.3d 502, 512 (5th Cir. 2021);

*see Damond*, 127 F.4th at 938 ("A claim is . . . frivolous when it 'lacks an arguable basis either in law or in fact.'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989))).

"[T]he plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Oscar Renda Contracting, Inc. v. Lubbock*, 463 F.3d 378, 381 (5th Cir. 2006) (citing *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)); *Damond*, 127 F.4th at 938; *Ramming*, 281 F.3d at 161. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Cambric v. City of Corpus Christi*, 170 F.4th 321, 324 (5th Cir. 2026); *Doe as Next Friend Doe v. Jewel*, 151 F.4th 236, 244 (5th Cir. 2025); *Willis v. W. Power Sports, Inc.*, No. 23-10687, 2024 WL 448354, at *1 (5th Cir. Feb. 6, 2024); *Spano ex rel. C.S.*, 65 F.4th at 262; *King v. Baylor Univ.*, 46 F.4th 344, 355 (5th Cir. 2022). "Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678); *accord King*, 46 F.4th at 355. Hence, "a complaint's allegations 'must make relief plausible, not merely conceivable, when taken as true.'" *Walker*, 938 F.3d at 734 (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009)); *see Damond*, 127 F.4th at 937-38 (noting that a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (quoting *Iqbal*, 556 U.S. at 678)); *King*, 46 F.4th at 355.

Generally, the court may not look beyond the four corners of the plaintiff's pleadings. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); *see King*, 46 F.4th at 356;

*Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012); *Hicks v. Lingle*, 370 F. App'x 497, 498 (5th Cir. 2010). The court may, however, consider "documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see Innova Hosp. San Antonio, L.P.*, 892 F.3d at 726 ("[A] court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" (quoting *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011))); *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). A court may also review documents "attached to a response to a motion to dismiss when [they are] sufficiently referenced in the complaint and [their] authenticity is unquestioned." *Am. Gen. Life Ins. Co. v. Mickelson*, No. H-11-3421, 2012 WL 1355591, at *2 (S.D. Tex. Apr. 18, 2012) (citing *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 293-94 (5th Cir. 2008) (relying on documents that were "explicitly referenced in the complaint, acknowledged in the answers, and attached to [Plaintiff]'s opposition to the Defendants' motions to dismiss")); *see Blakely v. Andrade*, 360 F. Supp. 3d 453, 472 (N.D. Tex. 2019); *United States ex rel. Colquitt v. Abbott Lab'ys*, 864 F. Supp. 2d 499, 531 n.9 (N.D. Tex. 2012); *Keel v. Wal-Mart Stores, Inc.*, No. 1:11-CV-248, 2012 WL 488248, at *2 (E.D. Tex. Jan. 11, 2012), *adopted by* No. 1:11-CV-248, 2012 WL 469862 (E.D. Tex. Feb. 14, 2012).

"[A] motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)); *accord IberiaBank Corp.*, 953 F.3d at 345; *Leal*,

731 F.3d at 410. "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *accord Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (noting that at the 12(b)(6) stage the court's task "is to determine whether the plaintiff [has] stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success"); *Leal*, 731 F.3d at 410. "In other words, a motion to dismiss an action for failure to state a claim 'admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts.'" *Ramming*, 281 F.3d at 161-62 (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992)); *accord Yazdi v. Lafayette Par. Sch. Bd.*, No. 6:18-CV-00510, 2020 WL 5876703, at *2 (W.D. La. Sept. 30, 2020).

A Rule 12(b)(6) motion to dismiss must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. *Twombly*, 550 U.S. at 555. Accordingly, a district court should not dismiss a complaint for failure to state a claim unless a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *accord Damond*, 127 F.4th at 937; *Benfer*, 120 F.4th at 1279; *King*, 46 F.4th at 355; *IberiaBank Corp.*, 953 F.3d at 345 (quoting *Iqbal*, 556 U.S. at 678); *Zastrow v. Hous. Auto Imps. Greenway Ltd.*, 789 F.3d 553, 559 (5th Cir. 2015). "Facial plausibility is satisfied 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Benfer*, 120 F.4th at 1279 (quoting *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021)); *Damond*, 127 F.4th at 937; *accord Hamilton v. Dallas County*, 79 F.4th 494, 499 (5th Cir. 2023); *King*, 46 F.4th at 355-56.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Walker*, 938 F.3d at 735 (quoting *Iqbal*, 556 U.S. at 678); *accord King*, 46 F.4th at 356. "Factual allegations that are 'merely consistent with a defendant's liability, stop short of the line between possibility and plausibility of entitlement to relief,' and thus are inadequate." *Walker*, 938 F.3d at 735. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Shaw v. Villanueva*, 918 F.3d 414, 415 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678); *accord Damond*, 127 F.4th at 938 ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002))); *King*, 46 F.4th at 356 ("[C]ourts 'do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005))). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *Shaw*, 918 F.3d at 419.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *Wells v. Tex. Tech Univ.*, No. 24-10518, 2025 WL 673439, at *2 (5th Cir. Mar. 3, 2025); *Shaw*, 918 F.3d at 419. In other words, to state a cognizable cause of action, the complaint must allege sufficient facts to "nudge" the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *Leal*, 731 F.3d at 410; *see Walker*, 938 F.3d at 734 (quoting *Grubbs*, 565 F.3d at 186). Generally, at the 12(b)(6) stage, a plaintiff is simply required to inform the defendant of the factual basis of his complaint in order to avoid dismissal for failure to state a claim. *See Johnson v. City of Shelby*,

574 U.S. 10, 11-12 (2014) (citing FED. R. CIV. P. 8(a)(2)); *Groden v. City of Dallas*, 826 F.3d 280, 283 (5th Cir. 2016).

1. Breach of Contract

Under Texas law, the essential elements of a breach of contract claim are:

(1) the existence of a valid contract;

(2) the plaintiff performed or tendered performance;

(3) the defendant breached the contract; and

(4) the plaintiff was damaged as a result of the breach.

*Wesdem, L.L.C. v. Ill. Tool Works, Inc.*, 70 F.4th 285, 294 (5th Cir. 2023); *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 415 (5th Cir. 2021); *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). A breach occurs when a party fails or refuses to perform an act that it has expressly promised to perform. *Franconia Assocs. v. United States*, 536 U.S. 129, 142-43 (2002); *TLC Hosp., LLC v. Pillar Income Asset Mgmt., Inc.*, 570 S.W.3d 749, 763 (Tex. App.—Tyler 2018, pet. denied); *Cal. Ins. Guarantee Ass'n v. Hill Bros. Transp., Inc.*, 497 S.W.3d 67, 76 (Tex. App.—Austin 2016, no pet.). "A plaintiff suing for breach of contract must point to a specific provision in the contract that was breached by the defendant." *Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 971 (N.D. Tex. 2014) (collecting cases); *accord Sivertson v. Citibank, N.A.*, 390 F. Supp. 3d 769, 787 (E.D. Tex. 2019). Moreover, the plaintiff must establish that he performed or tendered performance under the contract. *Raphael v. Camden Dev., Inc.*, No. 05-24-00053-CV, 2024 WL 4969954, at *5 (Tex. App.—Dallas Dec.

4, 2024, no pet.); *Keaton v. Cmty. Loan Servicing, LLC*, No. 3:22-cv-00172, 2024 WL 691368, at *3 (S.D. Tex. Feb. 20, 2024).

Hence, in an action alleging breach of an insurance contract, the plaintiff must establish not only coverage but also that the contract was breached, that the insured was damaged by the breach, and the amount of damages resulting from the breach. *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 198 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing *Emp.'s Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988), *overruled in part on other grounds by State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex. 1996)). Generally, "for an insurance company to be liable for a breach of its duty to satisfy a claim presented by its insured, the insured must prove that its claim falls within the insuring agreement of the policy." *Crose v. Humana Ins. Co.*, 823 F.3d 344, 348 (5th Cir. 2016).

In the case at bar, viewing all of the factual allegations in a light most favorable to Minton, the court finds that Minton has alleged sufficient facts to state a plausible breach of contract claim. First, Minton alleged the existence and validity of the Policy and his compliance with its terms. He maintains that he is a dependent under the Policy, provides his group number and member ID number, and states that "[t]he Policy was issued with an effective date of 2005" and that "[i]t was terminated effective December 31, 2024." Moreover, Minton avers that "[a]t all material times, the Policy was in full force and effect. All the premium payments were paid by the Mintons. At all material times, Mr. Minton complied with all Policy provisions and conditions precedent to qualify for benefits before filing suit." Thus, Minton's allegations satisfy the first two elements of his breach of contract claim.

BCBSTX primarily argues, however, that Minton has not pleaded facts sufficient to show how BCBSTX allegedly breached the terms of the Policy, asserting that Minton's claims are vague, conclusory, and deficient as a matter of law. In particular, BCBSTX maintains that Minton does not identify any specific provision of the Policy at issue and fails to allege adequately how BCBSTX failed to comply with any of its obligations under the Policy. The court disagrees. Minton's Complaint states that BCBSTX "owed [him] a duty to pay for his medical treatment if it was covered under the Policy," which "provided both in-network and out-of-network benefits for medical treatment." Importantly, Minton alleges that "[t]hese benefits applied to all treatment [Minton] received between March 2023-December 2024," specifically noting that they "applied to Paracentesis treatment, treatment for internal bleeding, and organ transplants." Minton further states that BCBSTX "initially approved this treatment." Regarding breach, the Complaint alleges that BCBSTX "breached its duty under the policy to pay covered medical expenses claims after March 2023." Additionally, Minton maintains that BCBSTX "breached the contract by failing to pay for the covered treatment outlined above . . . [and] has further breached the contract by underpaying some of these claims." Minton lastly alleges that, due to BCBSTX's breach, he has incurred damages. Minton maintains that BCBSTX has denied or underpaid $322,484.92 in claims, specifically alleging that the total outstanding bills at present total $146,473.04, of which $94,460.54 has already been sent to a collection agency.

While a plaintiff asserting a breach of contract claim must identify the contractual obligations allegedly breached, Minton need not cite the precise policy section or quote the Policy verbatim in order to survive a motion to dismiss. *See Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 732 (5th Cir. 2018) (holding that the

Plaintiff Hospital adequately stated a claim for breach of contract under Texas law where the Hospital "alleged the existence of valid contracts (non-ERISA plans), performance by the Hospital, breach of the contracts by the Insurers, and damages in the form of underpayment or non-payment sustained as a result of the breach"); *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 739 (5th Cir. 2015) (holding that a provider had sufficiently identified a specific provision in a contract when the provider alleged that the insurance company breached "the provision obligating [the insurance company] to pay [the provider's] claims for covered products and services"); *Walker v. Regence Blue Cross Blue Shield of Or.*, No. CV G-15-064, 2015 WL 9460143, at *6 (S.D. Tex. Dec. 23, 2015). At the pleading stage, Minton need only allege facts that plausibly identify the contractual duty at issue and explain how BCBSTX failed to perform that duty.

Here, Minton has done so. He alleges that the Policy obligated BCBSTX to pay covered medical expenses, that the relevant medical treatments—including paracentesis, treatment for internal bleeding, and organ transplants—were covered under the Policy during the relevant time period, that BCBSTX initially approved those treatments, and that BCBSTX later refused to pay or underpaid the resulting claims. He further alleges that this refusal constituted a breach of BCBSTX's contractual obligations and identifies the amount of unpaid and underpaid claims as well as the resulting financial harm. *See Columbia Med. Ctr. of Arlington Subsidiary, L.P. v. Highmark Inc.*, No. 4:24-CV-00080-O, 2024 WL 4229307, at *7 (N.D. Tex. Sept. 18, 2024) (finding the facts sufficient to sustain an allegation of breach where "Plaintiffs alleged the existence of valid contracts, performance by the Plaintiffs in the form of providing medically necessary services to each of the Subscribers, breach of the Agreement by the Defendant by failing

to pay for the medically necessary care provided, and damages to the tune of $268,121.72 in the form of non-payment sustained as a result of the breach"). Moreover, Minton's damages are spelled out in an itemized spreadsheet properly incorporated and attached to the Complaint. *See Electrostim*, 614 F. App'x at 739 (noting that Plaintiff "described the services and products [the testing services] in some detail" and alleged that Defendant's "failure to pay claims—which were eventually itemized in spreadsheets—caused [Plaintiff] to sustain damages"). These allegations are sufficient to place BCBSTX on notice of the contractual promise allegedly breached and the conduct giving rise to the claim. *See Hartford Fire Ins. Co. v. Wheels Am. Dall. 1 LLC*, No. 3:22-CV-00316-X, 2022 WL 2906642, at *2 (N.D. Tex. July 22, 2022) (finding that, even where the contract was not included in the pleadings, Plaintiff's allegation that Defendant breached the policy agreement by failing to pay additional premiums was sufficient to put Defendant on notice as to which provision it allegedly breached).

In its Motion, BCBSTX points to two specific claims—one for ambulance services and another for a private hospital room—and argues that those claims were not underpaid but were processed in accordance with the terms of the Policy. Because the Policy is referenced throughout the Complaint, central to Minton's claims, and attached to BCBSTX's Motion, the court may properly consider its terms in resolving the Motion. *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019). Nevertheless, BCBSTX's argument goes to the merits of whether it correctly interpreted and applied the Policy to particular claims, not whether Minton has plausibly alleged a breach of contract. At the Rule 12(b)(6) stage, the court's task is not to determine whether BCBSTX ultimately complied with the Policy, but whether the Complaint contains sufficient factual allegations to state a plausible claim for relief. *See Barber v. Rounds*,

169 F.4th 577, 582 (5th Cir. 2026) ("At the Rule 12(b)(6) stage, the court must accept the complaint's well-pled allegations as true and construe them in the light most favorable to [the plaintiff]."). Even excluding the claims for ambulance services and the private hospital room, Minton has alleged that the Policy covered other medical treatments such as paracentesis treatment, liver testing, therapy treatment, CT scans, office visits, labs, and consultations. Moreover, Minton contends that BCBSTX initially approved some of those treatments and that BCBSTX later denied or underpaid the resulting claims in violation of its contractual obligations. Accepting those allegations as true, as the court must at this stage, the court concludes that the Complaint plausibly alleges a cause of action for breach of contract. Whether BCBSTX ultimately processed the claims in accordance with the Policy is a question more appropriately resolved based on a developed factual record.

B. Standing

BCBSTX additionally maintains that Minton's Complaint should be dismissed under Rule 12(b)(1). A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of the federal district court. *See* FED. R. CIV. P. 12(b)(1). The absence of Article III standing "is a defect in subject matter jurisdiction," and therefore provides appropriate grounds for the court to dismiss an action pursuant to Rule 12(b)(1) for want of subject matter jurisdiction. *Goberman v. Cascos*, No. 3:16-CV-0994-G, 2016 WL 3688604, at *2 (N.D. Tex. Jul. 12, 2016) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541-42 (1986)); *see Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662 (2019) (recognizing that standing is required for an Article III court to have jurisdiction); *Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 262-63 (5th Cir. 2020); *Cornerstone Christian Schs.*

*v. Univ. Interscholastic League*, 563 F.3d 127, 133 (5th Cir. 2009); *Isbell v. DM Recs., Inc.*, 591 F. Supp. 2d 871, 874 (E.D. Tex. 2008) ("When a plaintiff lacks standing to sue in federal court, it is appropriate for the court to dismiss the action pursuant to Rule 12(b)(1)."). "Like standing, 'ripeness is a constitutional prerequisite to the exercise of jurisdiction.'" *Inst. for Free Speech v. Johnson*, 148 F.4th 318, 331 (5th Cir. 2025) (quoting *Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 922 (5th Cir. 2017)). Ripeness is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Johnson*, 148 F.4th at 331 (citing *Texas v. United States*, 523 U.S. 296, 300 (1998)).

Here, BCBSTX argues that Minton lacks Article III standing to bring claims related to conduct that has not yet occurred, as those claims are not yet ripe. Specifically, BCBSTX argues that, to the extent Minton's breach of contract claim is predicated on his allegation that BCBSTX may reverse decisions on claims at some point in the future, such claims are not yet ripe and should be dismissed. This argument misses the mark. As previously discussed, Minton has plausibly stated a breach of contract claim based on BCBSTX's alleged denial and underpayment of claims that have already been submitted and processed. The viability of that claim does not depend on whether BCBSTX might take some future action with respect to other claims. In other words, whether future claims will be denied, underpaid, or later corrected is not a present controversy requiring judicial resolution. Those issues, if they arise, can be litigated if and when an actual breach causes a concrete injury. Accordingly, even assuming that allegations regarding

possible future reversals are too speculative to satisfy Article III's ripeness requirement, dismissal is not warranted on Rule 12(b)(1) grounds because Minton's breach of contract claim is independently supported by allegations of past conduct that has already allegedly caused him concrete financial injury.

III. Conclusion

In accordance with the foregoing, BCBSTX's Motion to Dismiss Plaintiff's Second Amended Complaint and Memorandum in Support (#23) is DENIED.

SIGNED at Beaumont, Texas, this 11th day of August, 2026.

Marcia A. Crone

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE